IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NEWMAN,          )<br>                                                  )<br>             Plaintiff,           )<br>                                                  )<br>     vs.                                      )<br>                                                  )<br>M. MCLEAN, et al.,             )<br>                                                  )<br>             Defendant(s).    )<br>_____)  | No. C 05-01724 JW (PR)<br><br>ORDER GRANTING MOTION TO DISMISS; DIRECTING DEFENDANTS TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION ON REMAINING CLAIMS; DENYING MOTION FOR DEFAULT JUDGMENT<br><br>(Docket Nos. 69 & 75) |

Plaintiff, a California prisoner at the time he filed the instant action, filed a pro se civil rights complaint under 42 U.S.C. § 1983, alleging deprivations of his constitutional rights secured by the First, Eighth, and Fourteenth Amendments by various defendants while plaintiff was incarcerated at the Pelican Bay State Prison ("PBSP") in Crescent City, California. With the Court's leave, plaintiff filed first and second amended complaints. The Court found the second amended complaint,[1] liberally construed, stated cognizable claims under § 1983 and ordered defendants be served with second amended complaint.

Defendants filed a motion to dismiss the complaint (Docket No. 69) under

---

[1] All future references to plaintiff's "complaint" are to his second amended complaint.

1 Federal Rule of Civil Procedure 12(b) for (1) lack of subject matter jurisdiction, (2) for failure to state a claim upon which relief may be granted, and (3) for plaintiff's failure to exhaust administrative remedies as mandated by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff filed an opposition to the motion, and defendants filed a reply.

**DISCUSSION**

A. <u>Legal Claims and Analysis</u>

Plaintiff raises nine claims in his complaint, including claims for deprivation of his constitutional rights as secured by the First, Eighth, and Fourteenth Amendments, against PBSP officials McLean, Rowe, Whitford, Graham, Nimrod, Allen, the California Department of Corrections Rehabilitation ("CDCR"), and the State of California. Defendant Allen has not been served with the summons and complaint. (<u>See</u> Docket No. 68.)

1. <u>State Immunity</u>

Plaintiff's action involves claims for money damages against the State of California and the CDCR for their alleged failure to provide adequate safety devices, *i.e.*, an upper-bunk ladder or stairs, the lack of which caused plaintiff's knee injury on March 1, 2003. Defendants argue that the Court should dismiss all claims against the State of California and the CDCR because they are immune from suit under the Eleventh Amendment and have not waived immunity.

It is well established that the Eleventh Amendment bars from the federal courts suits against a state by its own citizens, citizens of another state or citizens or subjects of any foreign state. <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 237-38 (1985). Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (citing <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978)). Consent to suit by the state "is effective 'only where stated by the

most express language.'" <u>Yakama Nation v. Washington Dept. of Revenue</u>, 176 F.3d 1241, 1245 (9th Cir. 1999) (quoting <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 305 (1990)) (state's engaging in litigation and depositing proceeds from seizure into court's register is not an unequivocal waiver of immunity where state pled 11th Amendment defense in answer). This Eleventh Amendment immunity also extends to suits against a state agency, <u>see, e.g.</u>, <u>Brown v. California Dept. Of Corr.</u>, No. 07-55409, slip op. at 785 (9th Cir. Jan. 22, 2009) (California Dept. of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity). In his opposition, plaintiff has failed to show that the state and its agency has expressly consented to suit. Rather, he cites various state codes to which plaintiff alleges the CDCR failed to comply. However, a suit will be barred under the Eleventh Amendment if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the state from acting, or to compel it to act. <u>See</u> <u>id.</u> (citing <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963)). A federal court, for example, may not entertain a suit against a state official that in essence seeks damages from the public treasury nor may it order state officials to conform their conduct with state law. <u>See</u> <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 97-121 (1984); <u>Confederated Tribes & Bands v. Locke</u>, 176 F.3d 467, 469 (9th Cir. 1999) (damages claim against governor in his official capacity barred by 11th Amendment); <u>United Mexican States v. Woods</u>, 126 F.3d 1220, 1222 (9th Cir. 1997). It is clear that this Court does not have jurisdiction to review the alleged failure by the State of California and its agency to conform their conduct with state law under the Eleventh Amendment. <u>Id.</u>

The claims against the State of California and the CDCD must also be dismissed for failure to state a claim upon which relief may be granted. First of all, the State of California is not a "person" within the meaning of § 1983. Relying in part on the Eleventh Amendment immunity discussed above, the Supreme Court also

has held that neither a state nor its officials acting in their official capacities are "persons" under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Similarly, state agencies are protected from suit under § 1983. See Wolfe v. Strankman, 392 F.3d 358, 364(9th Cir. 2004) (dismissing State of California and Judicial Council of California because given the role of the Judicial Council, it is clearly a state agency).

Accordingly, the motion to dismiss the claims against the State of California and the CDCR is GRANTED for the reasons stated above.

2.   Claim 2 - Eighth Amendment Claim against Defendant McLean

Defendants argue that plaintiff's allegations under Claim 2 against defendant Nurse McLean are insufficient to state an Eighth Amendment claim of deliberate indifference to serious medical needs. Assuming plaintiff had a serious medical need, defendants contend that Nurse McLean's actions with respect to the treatment she provided to plaintiff for his knee injury does not rise to the level of deliberate indifference. According to the pleadings in the complaint, Nurse McLean provided the following treatment to plaintiff: on March 4 or 5, 2003, Nurse McClean examined plaintiff's knee cap after the initial injury and prescribed Tylenol with instructions to return for additional treatment if the knee continued to hurt, (Compl. 6); plaintiff returned approximately three weeks later on March 21 or 25, 2003, at which time Nurse McLean ordered an X-ray to determine the full extent of the internal injury, id. at 7; Nurse McLean told plaintiff that he would receive a knee brace the next day, but plaintiff did not actually receive the brace until a few months later, id.; plaintiff's knee was X-rayed on March 27, 2003; after examining the X-ray, Nurse McLean determined that no physical injury was apparent, id. at 8; Nurse McLean terminated the exam with a referral to see another physician, but not an orthopedic doctor or with orders for an MRI examination as plaintiff desired, id. Plaintiff received surgery for his knee on February 23, 2004, almost a year after he allegedly incurred the injury on March 1, 2003.

1   Defendants argue that plaintiff's claims against Nurse McLean are nothing
2  more than a mere disagreement over the course of treatment which does not rise to a
3  § 1983 claim. "A difference of opinion between a prisoner-patient and prison
4  medical authorities regarding treatment does not give rise to a § 1983 claim."
5  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of
6  nothing more than a difference of medical opinion as to the need to pursue one
7  course of treatment over another is insufficient, as a matter of law, to establish
8  deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir.
9  2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433
10 F.2d 873, 874 (9th Cir. 1970).

11   Plaintiff's allegations fail to show that Nurse McLean acted with deliberate
12 indifference to his serious medical needs. Nurse McClean saw plaintiff with a day
13 or two of his initial injury, promptly ordered an X-ray upon a follow-up examination
14 after plaintiff complained of continual pain, and referred plaintiff to a physician for
15 further treatment. There is nothing in her actions to suggest that Nurse McClean
16 knew that petitioner faced a substantial risk of serious harm and disregarded that risk
17 by failing to take reasonable steps to abate it. See Farmer v. Brennan, 511 U.S. 825,
18 837 (1994). At most, Nurse McLean's actions may give rise to a claim of medical
19 malpractice or negligence which are insufficient to make out a violation of the
20 Eighth Amendment. See Toguchi, 391 F.3d at 1060-61; Hallett v. Morgan, 296 F.3d
21 732, 744 (9th Cir. 2002); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981);
22 see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in
23 claims stemming from alleged delays in administering pain medication, treating
24 broken nose and providing replacement crutch, because claims did not amount to
25 more than negligence); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing
26 or treating a medical condition, without more, does not violate a prisoner's 8th
27 Amendment rights).

28   Accordingly, plaintiff's Eighth Amendment claim against Nurse McClean is

DISMISSED for failure to state a claim upon which relief may be granted.

    3.    <u>Claims 5 and 6 - First Amendment and Retaliation Claims against Defendant Nimrod</u>

Defendants argue that plaintiff's claims against defendant Nimrod should be dismissed for failure to allege facts sufficient to state a First Amendment violation. Under Claims 5 and 6, plaintiff alleges that defendant Nimrod denied him access to the institution's grievance procedures and that his "arbitrary decision" not to file plaintiff's inmate appeals violated plaintiff's First Amendment right to petition the government for redress of grievances. (Compl. 20-21, 24.) Plaintiff also alleges that Nimrod's rejection of plaintiff's grievances were in retaliation for filing previous grievances.

Plaintiff's claim that defendant Nimrod improperly denied, rejected and/or screened out his administrative appeals is without merit because it is will established that there is no constitutional right to a prison administrative appeal or grievance system. See <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); see also <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996); <u>Garfield v. Davis</u>, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); accord <u>Wolff v. McDonnell</u>, 418 U.S. 539, 565 (1974) (accepting Nebraska system wherein no provision made for administrative review of disciplinary decisions). It matters not that plaintiff invokes his First Amendment right to petition the government and of access to the courts. Although plaintiff has a First Amendment right to petition the government for redress of grievances, he has no right to a response or any particular action. See <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991). And although he also has a right of access to the courts, the filing of this action makes clear that the hindrances of which he appears to complain did not cause him an actual injury to court access. See <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996); <u>Jones v. Blanas</u>, 393 F.3d 918, 936 (9th Cir 2004).

Furthermore, plaintiff's claim that defendant Nimrod's decision to reject his inmate appeals was "arbitrary" is not supported by any evidence. In returning

plaintiff's July 31, 2003 inmate appeal, defendant Nimrod stated that it was being rejected because it was duplicative of a previously filed grievance, No. 03-02124 filed July 26, 2003.  The Court's own review of these appeals show that there is some similarity between them for defendant Nimrod to have concluded they were duplicative.  However, whether defendant Nimrod's decision was correct or incorrect is irrelevant to the issue of whether his actions deprived plaintiff of his right of access to courts because plaintiff still had the opportunity to appeal the decision but failed to do so.

With respect to the previously filed inmate appeal no. 03-02124, plaintiff alleges that defendant Nimrod wrongfully cancelled the second-level review. However, defendant Nimrod's comment on the screening form states that plaintiff's "refusal to cooperate with the interview process has caused cancellation of [plaintiff's] appeal." (Compl. Ex. O.)  It cannot be said that this decision was arbitrary when it was in accordance with state regulations.  See Cal. Code of Regs. Tit. 15, 3084.4 (d).  Moreover, even if the rejection was incorrect, plaintiff still had the option to appeal the allegedly unlawful cancellation to the Appeals Office. (Compl. Ex. O.)  However, plaintiff provides no documentation to show that he attempted to pursue an appeal of the rejection at second-level review which defendant Nimrod unlawfully obstructed.  Accordingly, plaintiff's First Amendment claim against defendant Nimrod is DISMISSED for failure to state a claim.

Lastly, plaintiff's claim that defendant Nimrod acted in retaliation fails because plaintiff does not allege sufficient facts to support this claim.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  Plaintiff's conclusory allegations fall short of satisfying these basic elements.  Moreover, plaintiff need not

be provided with an opportunity to cure this deficiency at this time because the record makes clear that he did not exhaust available administrative remedies with respect to his retaliation claim. See *infra* p. 11. Accordingly, plaintiff's retaliation claim is dismissed without prejudice. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (action must be dismissed without prejudice unless prisoner exhausted available administrative remedies before he filed suit, even if prisoner fully exhausts while the suit is pending).

    4.    <u>Exhaustion</u>

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies equally to prisoners held in private or government facilities. See Roles v. Maddox, 439 F.3d 1016, 1017-18 (9th Cir. 2006). Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. Even when the relief sought cannot be granted by the administrative process, *i.e.*, monetary damages, a prisoner must still exhaust administrative remedies. Id. at 85-86 (citing Booth, 532 U.S. at 734).

"The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." Id. at 93. Therefore, the PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Id. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (footnote omitted). In other words, the PLRA's exhaustion requirement

1   cannot be satisfied "by filing an untimely or otherwise procedurally defective
2   administrative grievance or appeal." Id. at 84.  Furthermore, administrative
3   remedies may not be exhausted where the grievance, liberally construed, does not
4   have the same subject and same request for relief. See generally O'Guinn v.
5   Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (even with
6   liberal construction, grievance requesting a lower bunk due to poor balance resulting
7   from a previous brain injury was not equivalent to, and therefore did not exhaust
8   administrative remedies for, claims of denial of mental health treatment in violation
9   of the ADA and Rehabilitation Act).

10   The State of California provides its inmates and parolees the right to appeal
11   administratively "any departmental decision, action, condition, or policy which they
12   can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs.
13   tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative
14   appeals alleging misconduct by correctional officers. See id. § 3084.1(e).  In order
15   to exhaust available administrative remedies within this system, a prisoner must
16   proceed through several levels of appeal: (1) informal resolution, (2) formal written
17   appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution
18   head or designee, and (4) third level appeal to the Director of the California
19   Department of Corrections and Rehabilitation. Id. § 3084.5; Barry v. Ratelle, 985 F.
20   Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative remedies
21   exhaustion requirement under § 1997e(a). Id. at 1237-38.  A prisoner need not
22   proceed further and also exhaust state judicial remedies. Jenkins v. Morton, 148
23   F.3d 257, 259-60 (3d Cir. 1998).

24   Defendants argue that plaintiff failed to administratively exhaust Claims 1-6.
25   Defendants have provided the declarations of Neah Huynh, Deputy Attorney
26   General representing defendants in this action, C. Navarro, the Litigation Assistant
27   at California State Prison - Corcoran, and C. Wilber, Appeals Coordinator at PBSP ,
28   sufficient to show that plaintiff did not exhaust Claims 1-6.  Furthermore, plaintiff's
     own pleadings indicate that he failed to properly exhaust administrative remedies.

With respect to Claim 1 of his complaint, plaintiff states that his September 12, 2004 inmate appeal on this claim was rejected as being untimely. (Compl. 4.) Plaintiff provided a copy of the returned appeal, which states the reason for the rejection was because plaintiff "failed to appeal this 2003 issue on time." (Compl. Ex. K.) Plaintiff believes this was sufficient to fully exhaust his administrative remedies. (Compl. 5.) Plaintiff is mistaken as the PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 84. Accordingly, plaintiff's Claim 1 was not administratively exhausted. For the same reason, plaintiff's inmate appeal filed on September 30, 2004, involving Claim 2 of plaintiff's complaint, was also rejected as untimely as indicated by the comment on the appeal: "If you disagreed with treatment in 2003 you should have appealed at that time." (Compl. Ex. L.)

With respect to Claim 3 against defendant Dr. Rowe, plaintiff states that he exhausted his administrative remedies under the same inmate appeal he referred to for Claim 1. (Compl. 14, Ex. K.) However, as discussed above under Claim 1, that inmate appeal was dismissed as untimely, which does not constitute proper exhaustion for the purposes of PLRA. In his opposition, plaintiff claims that he properly exhausted his claims under an inmate appeal filed on July 26, 2003. (Oppo. Ex. E.) In the appeal, plaintiff complained of inadequate medical treatment for his knee injury. Id. The appeal was denied because plaintiff was "uncooperative and refused to answer questions." Id. However, plaintiff took no further action after the appeal was cancelled, such as appealing the matter to the second level. Clearly, plaintiff did not exhaust his administrative remedies by proceeding through all the levels of appeal that were available to him with respect to Claim 3.

With respect to Claim 4 against defendant Whitford, plaintiff claims he fully exhausted administrative remedies because the inmate appeal was returned as being a "duplicate." (Compl. 18.) Plaintiff alleges that defendant Nimrod refused to file and process the appeal for arbitrary reasons. Even if the rejection was in error,

plaintiff could have appealed Nimrod's decision to the Appeals Office. (Id. Ex. N.) The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Id. at 935. Plaintiff did not pursue all the remedies that were available since he could have appealed the alleged improper screening out of the inmate appeal as being duplicative but failed to do so. Accordingly, plaintiff failed to administratively exhaust his claims against defendant Whitford under Claim 4 of the complaint.

Lastly, defendants argue that plaintiff failed to exhaust administrative remedies with respect to Claim 5 and 6 in his complaint against defendant Nimrod. Plaintiff makes no allegations regarding exhaustion of these claims in his complaint. Defendants' declarations and supporting documents are sufficient to show that plaintiff did not submit any inmate appeal concerning his claims of retaliation and denial of access to the prison's grievance procedures by defendant Nimrod. (See Decl. Huynh at 3.)

Because plaintiff failed to exhaust his administrative remedies with respect to Claims 1-6, defendants' motion to dismiss these claims is GRANTED. See 42 U.S.C. § 1997e(a). Since Claims 1, 2 and 5 are dismissed with prejudice on separate grounds as discussed earlier in this order, only Claims 3, 4 and 6 are DISMISSED without prejudice to plaintiff's refiling after all available administrative remedies have been properly exhausted.

B.   Unserved Defendant Dr. Allen

The summons for defendant Allen was returned with the comment that "Doctor is no longer at the facility. Facility will not accept service." (See Docket No. 68.) Accordingly, this defendant has not been served.

The clerk of the Court shall send a copy of this order to the Litigation

Coordinator at PBSP, who is requested to provide any forwarding address information that is available with respect to defendant Allen.  However, it is ultimately plaintiff's responsibility to provide a name and address for this defendant to be served in order for the Court to direct the Marshal to serve process on a defendant.  Plaintiff must provide the Court with this information in a pleading no later than **thirty (30) days** from the date of this order, in order for the Court to provide the United States Marshal with sufficient information for service to be effected under Fed. R. Civ. P. 4(c)(2).  See Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994).  **Failure to do so may result in dismissal of the complaint against this defendant under Rule 4(m) of the Federal Rules of Civil Procedure.**

Plaintiff filed a motion for default judgment against defendant Allen. (Docket No. 75.)  Federal Rule of Civil Procedure 55(b) contemplates that a default judgment may be sought after default has been entered against a defendant.  See also New York Life Ins. Co. v. Brown, 84 F.3d 137 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.").  Plaintiff's motion for default judgment is premature because default has not been entered against defendant Allen.  Furthermore, defendant Allen is not in default since he has not yet been served with the summons. The motion for default judgment is therefore DENIED.  (Docket No. 75.)

**CONCLUSION**

For the foregoing reasons, it is hereby ordered as follows:

1. Defendants' motion to dismiss (Docket No. 69) is GRANTED.  All claims against defendants State of California and CDCR are DISMISSED with prejudice under the Eleventh Amendment and for failure to state claim under § 1983. The Eighth Amendment claim against defendant McLean is DISMISSED with prejudice for failure to state a claim upon which relief may be granted.  The First Amendment claim against defendant Nimrod is DISMISSED with prejudice for failure to state a claim.  Plaintiff's retaliation claim against defendant Nimrod under

Claim 6 and Eighth Amendment claims against defendants Rowe and Whitford under Claim 3 and 4 are DISMISSED without prejudice for failure to exhaust administrative remedies. The clerk shall terminate the following defendants from this action since all claims against them have been dismissed: the State of California, McClean, Nimrod, Rowe and the CDCR (listed twice).

  2. The remaining defendants shall, within **ninety (90) days** from the date this order is filed, file a motion for summary judgment or other dispositive motion, or shall notify the Court that they are of the opinion that this case cannot be resolved by such a motion, with respect to the remaining claims in this action. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.

  All papers filed with the Court shall be served promptly on plaintiff.

    a. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants' counsel not later than **thirty (30) days** from the date defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a

> genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

    b.    Defendants may file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

    c.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

3.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

For plaintiff's information, the proper manner of promulgating discovery is to send demands for documents or interrogatories (questions asking for specific, factual responses) directly to defendants' counsel. See Fed. R. Civ. P. 33-34. The scope of discovery is limited to matters "relevant to the claim or defense of any party . . ." See Fed. R. Civ. P. 26(b)(1). Discovery may be further limited by court order if "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action

to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). <u>In order to comply with the requirements of Rule 26, before deciding to promulgate discovery plaintiff may find it to his benefit to wait until defendants have filed a dispositive motion which could include some or all of the discovery plaintiff might seek.</u> In addition, no motion to compel will be considered by the Court unless the meet-and-confer requirement of Rule 37(a)(2)(B) and N.D. Cal. Local Rule 37-1 has been satisfied. Because plaintiff is incarcerated he is not required to meet and confer with defendants in person. Rather, if his discovery requests are denied and he intends to file a motion to compel, he must send a letter to defendants to that effect, offering them one last opportunity to provide him with the information sought.

4. All communications by plaintiff with the Court must be served on defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants' counsel.

5. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court and the parties informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6. The clerk of the Court is instructed to send a copy of this order to the Litigation Coordinator at PBSP, to comply with the Court's request to provide information regarding defendant Allen who is no longer at the facility.

This order terminates Docket Nos. 69 and 75.

DATED: March 11, 2009

JAMES WARE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NEWMAN,<br><br>               Plaintiff,<br><br>   v.<br><br>MCLEAN, et al.,<br><br>               Defendants._____/ | Case Number: CV05-01724 JW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on    3/13/2009   , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Charles Newman
5450 W. Crenshaw Blvd.,
Los Angeles, Ca 90043


Dated:    3/13/2009

Richard W. Wieking, Clerk
/s/   By: Elizabeth Garcia, Deputy Clerk